**In re Myron LEVINE and Jacquelyn P. Levine, Debtors.**

**No. 91–327–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1991.

See also 132 B.R. 464.

John A. Yanchunis, St. Petersburg, Fla., for debtors.

Daniel Pilka, Brandon, Fla., for trustee.
Charles Weissing, Trustee.

## ORDER ON DEBTORS' MOTION FOR SANCTIONS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the Debtors' Motion for Sanctions pursuant to § 362(h) of the Bankruptcy Code against Daniel Pilka (Pilka), attorney for James A. Miller (Miller), a creditor in the above-captioned Chapter 7 liquidation case and Miller. The Court has considered the Motion, together with the record and comments of counsel, and finds the facts relevant to the matter under consideration to be as follows.

The Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on January 11, 1991. On February 8, 1991, Pilka wrote a letter to Jackson National Life (Jackson National), a company from whom the Debtors had purchased various annuities. In the letter, Pilka advised Jackson National of the pendency of the Debtors' bankruptcy case, and further advised that his client, a primary creditor of the Debtors, "contends that the annuities and accounts held by the Debtors with your institution, are not exempt under Florida or Federal Law.... (and) should your institution disperse (sic) to the (Debtors) any assets from their accounts, your institution may be held legal culpable for such disbursement...." In response to the letter received from Pilka, Jackson National informed the Debtors that annuity payments to the Debtors would be suspended, and such suspension would continue until Jackson National received a release either from the Court or the attorney. Pilka was informed by Neil E. Polster, the Debtors' former attorney, that Pilka's letter to Jackson National clearly constituted a violation of the Automatic Stay, and he requested that Pilka inform Jackson National that Pilka's original letter to Jackson National should be disregarded and that Jackson National should resume normal payments to the Debtors.

In defense of the Motion for Sanctions, Pilka contends that he never instructed Jackson National to cease annuity payments to the Debtors. Instead, Pilka simply informed Jackson National that if it distributed such proceeds to the Debtors, who then liquidated those proceeds despite Miller's objections to the Debtors' Claim of Exemptions, Jackson National might be held liable.

Section 362(h) of the Bankruptcy Code provides as follows.

§ 362. Automatic Stay.

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

It is undisputed that the Automatic Stay is one of the fundamental protections for the Debtors provided by the Bankruptcy Code. The Automatic Stay was designed by Congress to give the Debtors a breathing spell and to stop all collection efforts, harassment and foreclosure actions. 11 U.S.C. § 362(a)(1) House Report 1978. The scope of the Automatic Stay is quite broad, and is intended to enjoin any proceeding to recover a pre-petition claim. 11 U.S.C. § 362(a)(1) Senate Report 1978. The fact that Congress chose to specifically provide for sanctions for a violation of the Automatic Stay demonstrates the fundamental importance and significance of the Automatic Stay in Bankruptcy proceedings. See 11 U.S.C. 362(h).

█ There can be no doubt that the letter sent by Pilka to Jackson National was intended to, and in fact did, coerce Jackson National to cease making annuity payments to the Debtors. The fact that the letter was directed to Jackson National rather than the Debtors is of no import because the letter was designed to affect the Debtors' right in the annuity. Further, Pilka's letter to the Debtors' attorney, which stated that he never instructed Jackson National not to disburse proceeds to the Debtors but he merely informed Jackson National that it might be held liable if the Debtors liquidated the assets, cannot serve to exculpate Pilka from the consequences of Pilka's original letter. Clearly, Pilka's letter was designed to coerce Jackson National to cease making annuity payments to the Debtors, and it cannot be argued that this is not a violation of the Automatic Stay. In sum, this Court is satisfied that the Debtors' Motion for Sanctions against Pilka for violation of the Automatic Stay is well taken and should be granted. However, in light of the fact that there is no evidence that Miller took any action in violation of the Automatic Stay, the Motion for Sanctions for violation of the Automatic Stay against Miller is not well taken and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions against Daniel Pilka be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions against James A. Miller be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that Debtors have ten days from the date of this Order within which to file a schedule of damages, including costs and attorney fees. Mr. Pilka shall have ten days thereafter within which to respond. If there is no objection to the schedule of damages, this Court will enter an ex parte Order awarding sanctions. If there is an objection to the schedule of damages, this Court will hold a hearing to determine the proper sanctions.

DONE AND ORDERED.